ANDREW TRUMBO, &c., v. THOS. BARBER, &c.

*Fraudulent Conveyance—Parent and Child—No Consideration.*

> A conveyance by a father to his son of a large amount of property
> without a visible change of possession, and at a time when the father
> was heavily involved, and in the absence of proof that the son had paid
> any of the purchase price, or was able to do, held to be fraudulent as
> to creditors of the father.

APPEAL FROM FLEMING CIRCUIT COURT.

February 1, 1871.

OPINION OF THE COURT BY JUDGE PETERS:

In 1854, Lee and Grant owned jointly a farm, mills, and dwelling house, etc., on Licking river in Fleming county. Gault sold, as he proves, to Thomas Barber, Sr., his interest in said property, and Lee and Barber then made partition, Lee taking the farm, and Barber the mills, houses, etc., on the river. And on the 3rd of July, 1854, Lee conveyed the same to Thomas Barber, Sr., and Margaret, his wife, Daniel Barber, George Barber, and Thomas Barber, Jr., the three last being the sons of Thomas Barber, Sr.

In April of the same year Isaac Trumbo conveyed in consideration of $1,000 to Thomas Barber, Sr., Daniel Barber, George Barber, Thomas Barber, Jr., and Robert A. Caldwell a mill lot containing one acre with a dwelling house and mill on the oppo- site side of Licking river to the property conveyed to the Barbers by Lee, and in Bath county. Subsequently Caldwell sold and conveyed his interest, being the one-half in said mill property for the consideration recited in the deed to the Barbers.

In 1859, Thomas Barber, Sr., George Barber and Thomas Barber, Jr., conveyed all their interest in one-half of the property purchased of T. Trumbo to Daniel Barber in consideration that he had sold and released to them all his interest in the mills, etc., in Fleming county. This deed bears date the 2nd of March, 1859, and on the 17th day of the same month Thomas Barber, Sr., conveyed his interest in the Fleming property, designated *as one-*

*fifth,* to Thomas Barber, Jr., for the *recited* consideration of seven hundred dollars in hand paid. And this suit was brought on the 1st day of February, 1861, by appellants to set aside the last named conveyance, as fraudulent and to subject the property, or the interest of Thomas Barber, Sr., therein to the payment of debts, which they allege he owed them prior to said conveyance, and for which they had judgments and executions with returns of *nulla bona.*

In the petition, it is alleged that the purchase of the Fleming property was made by Thomas Barber, Sr., and the payments were made by him, that his wife had no estate, his sons were young men, two of them just over 21 years of age, and one of them had not arrived at that age when the purchase was made of Gault, that they had no means, and it is also alleged that when the last conveyance was made by T. Barber, Sr., of all his interest to his son on the 17th day of March, 1859, the recited consideration was not paid, nor any part thereof, nor has any part been paid since; that the son had not the means to pay the same, but that the conveyance was made with the fraudulent design to prevent the creditors of the father from subjecting it to the payment of their debts.

As to the original purchase from Gault, it is shown very clearly that the money and means to pay him were furnished by Thomas Barber, Sr., for Gault proves the first payment of $400, or $500, was made with the proceeds of a jack which the father owned, and had sold, and the other two payments were made by assigning to him two notes of $800 each, on Jackson, which were given to Thomas Barber, Sr., for the unpaid price of a tract of land which he had sold to Jackson, and Lee and Ewing prove they got the notes from Gault.

Then as to the sale by the father to the son, certainly no money was paid when the deed was written. Pickrell, the draftsman, proves that; Dudley, the clerk, saw no money paid to the grantor, he saw young Barber with some money on that occasion, and says he paid him his fees for taking the acknowledgement and for recording the deed, but has no recollection of seeing any money paid to the grantor.

Adams, the only witness who speaks of any money having been paid at any time, says in his examination in chief: There was *some* money paid at the time spoken of in the clerk's office, but the amount I do not recollect; to whom the money was paid, he

does not say, but at the close of his deposition he does say there was money paid by Thomas Barber, Jr., to Thomas Barber, Sr., the amount, however, he could not recollect; it was, as he says, paid in the clerk's office.

It is worthy of notice, that in a transaction of this magnitude to these parties, that no one of those present should have been called on to witness the payment of the money, out of the crowd which seems to have been there on that occasion, and that the attention of no one should have been called specially to it. The father was heavily indebted at the time this deed was made, the parties lived together; after the deed was made they continued to live as they had lived before, and no visible change had been made in their business. The son could not have been ignorant of the father's involvements and fails not only to prove that he paid the money for the property; but fails to prove that $700 was a sum that he could conveniently raise, or that he had money at the time, or how, or where he got it—facts which if true were susceptible of proof.

And it may be mentioned as a significant fact that the father neither answers the petition, nor is called on as a witness to testify, although he might have been made competent. The recitals in the deed are not evidence against strangers to it, and the transaction is not strengthened by anything in the deed.

From all the facts and circumstances, therefore, we are constrained to the conclusion that the deed of the 17th of March, 1859, from Thomas Barber, Sr., to Thomas Barber, Jr., was made to hinder and delay the creditors of the former, and in fraud of their rights, and that the evidence is wholly insufficient to establish the payment by the grantee of the recited consideration. Wherefore, the judgment is reversed and the cause is remanded with directions to subject the interest of Thomas Barber, Sr., in the property described in the pleadings and title papers to the payment of appellant's debts, it being one-fifth and one-fourth of one-fifth which he derived by the release of Daniel Barber to himself and others in the Fleming property for their interest in the Bath property and for other proceedings not inconsistent herewith.

*Lacy, for appellant.*
*Throop, for appellee.*